UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MACKENZIE WINNIE,

                Plaintiff,

    -v-                             9:20-CV-502

DURANT, Correction Officer,
ALBERT GRAVLIN, Capt.,
MICHAEL EDDY, Lt.,
ERNESTO PEREZ, Sgt.,
JARRED BULLOCK, Sgt.,
MATTHEW CHASE, C.O.,
NATHAN LAPLANTE, C.O.,
ROY HASTINGS, C.O., BURTON
CHEVIER, C.O., JOSHUA
WALRATH, C.O., and JASON
PAIGE, C.O.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

CAITLIN ROBIN AND         HENRY B. TILSON, ESQ.
  ASSOCIATES PLLC
Attorneys for Plaintiff
737 Main Street, Suite 201
Buffalo, NY 14203

HON. LETITIA A. JAMES       KONSTANDINOS D. LERIS, ESQ.
New York State Attorney General   Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On May 5, 2020, plaintiff Mackenzie Winnie ("Winnie" or "plaintiff"), an inmate at Upstate Correctional Facility, filed this 42 U.S.C. § 1983 action alleging that defendants Christopher Durant ("Durant") and John Does #1-10 violated his Eighth and Fourteenth Amendment rights when they subjected him to a violent assault that included kicks, punches, pepper spray, and severe verbal abuse.  Thereafter, the parties stipulated to the dismissal of Winnie's claims for conspiracy under 42 U.S.C. §§ 1983, 1985, and 1986.  Dkt. No. 11.  The parties also stipulated to the dismissal of plaintiff's Fourteenth Amendment due process claims.  Dkt. No. 15.

On January 13, 2021, Winnie amended his complaint to identify the Does as defendants Captain Albert Gravlin ("Gravlin"), Lieutenant Michael Eddy ("Eddy"), Sergeant Ernesto Perez ("Perez"), Sergeant Jarred Bullock ("Bullock"), Officer Matthew Chase ("Chase"), Officer Nathan LaPlante ("LaPlante"), Officer Roy Hastings ("Hastings"), Officer Burton Chevier ("Chevier"), Officer Joshua Walrath ("Walrath"), and Officer Jason Paige ("Paige").  Dkt. No. 28.

Winnie's three-count amended complaint asserts § 1983 claims for excessive force and failure to intervene against all of the named defendants based on the alleged physical assault he endured at Upstate Correctional Facility.  Dkt. No. 28.  Notably, however, the amended complaint also re-asserts the previously dismissed conspiracy and due process claims.  *Id.*

On March 3, 2021, Durant moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Winnie's amended complaint insofar as it asserted a § 1983 civil rights claim against him.  Dkt. No. 44.  According to Durant, the only cause of action alleged specifically against him is an Eighth Amendment failure-to-intervene claim.  *See* Dkt. No. 44-1.

On March 23, 2021, Gravlin, Eddy, Perez, Bullock, Chase, LaPlante, Hastings, Chevier, Walrath, and Paige moved under Rule 12(b)(6) for partial dismissal of Winnie's amended complaint.  Dkt. No. 58.  According to these defendants, the Fourteenth Amendment claims asserted against them are barred by *res judicata* because plaintiff already stipulated to the dismissal of these claims with prejudice.  Dkt. No. 58-1.  Even assuming otherwise, these defendants argue that the amended complaint fails to plausibly allege any viable claims for relief under the Fourteenth Amendment.

The motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  **BACKGROUND**

The following factual allegations are taken from Winnie's amended complaint, Dkt. No. 28, and are assumed true for the purpose of resolving defendants' motions to dismiss.

Winnie is an inmate at Upstate Correctional Facility ("Upstate C.F.") in Franklin County, New York.  *See* Am. Compl. ¶ 20.  During the time period relevant here, Durant, Gravlin, Eddy, Perez, Bullock, Chase, LaPlante, Hastings, Chevier, Walrath, and Paige were corrections officers at Upstate C.F.  *Id.* ¶¶ 8–19.

On December 8, 2019, Winnie told Durant that he had not received his full dinner.  Am. Compl. ¶ 21.  Later that night, around 9:00 p.m., Eddy, Bullock, Laplante, Hastings, Chevier, and Walrath removed plaintiff from his cell.  *Id.* ¶ 22.  They then began to kick, punch, beat, and strike plaintiff on his head, body, and limbs.  *Id.* ¶ 23.  They also pepper sprayed plaintiff, knocked him down with their shields, and placed him in mechanical restraints.  *Id.*

Thereafter, Eddy, Bullock, Laplante, Hastings, Chevier, and Walrath brought Winnie into a separate room where they cut off his clothing, waterboarded him, kicked him, punched him, beat him, struck him, pulled his hair and referred to him as a "hippy little girl with pretty long hair."  Am. Comp. ¶ 24.

4

During this encounter, Eddy, Bullock, Laplante, Hastings, Chevier, and Walrath asked plaintiff if he was "gay" or if he "had ever been raped yet." Am. Compl. ¶ 25. When plaintiff responded that he was not gay, and that it went against his Rastafarian religious beliefs, one of the defendants inserted two fingers into plaintiff's rectum and told plaintiff "now you are a gay Rasta." *Id.* ¶¶ 26–28.

As these events unfolded, Gravlin, Eddy, Perez, Bullock, Laplante, Hastings, Walrath, Chase, and Paige stood around observing the events and laughing at Winnie.[1] Am. Compl. ¶ 29. According to the complaint, defendant Laplante then returned plaintiff to his cell without decontaminating him even though pepper spray and/or mace had been deployed against him, causing him to experience severe burning and pain for days afterward. *Id.* ¶ 30.

## III. <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must present a claim for relief that is plausible on its face. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). When assessing the plausibility of a plaintiff's complaint, the court should construe the complaint liberally and draw all reasonable inferences in plaintiff's favor. *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d

---

[1] Winnie appears to allege that Eddy, Bullock, Laplante, Hastings, Chevier, and Walrath were both active participants and mere bystanders to the Incident.

537, 540 (N.D.N.Y. 2012).  However, when a plaintiff's complaint fails to plead facts that create a reasonable inference that the defendant is liable for the misconduct alleged, grant of a motion to dismiss is proper.  *Ashcroft*, 556 U.S. at 678.

## IV. <u>DISCUSSION</u>

### A. <u>Durant's motion to dismiss</u>

In his separate motion to dismiss, Durant contends that Winnie's amended complaint must be dismissed against him.  According to Durant, plaintiff has failed to allege that he was responsible for, or even present during, any of the alleged misconduct by the other defendants.

Upon review, Durant's motion to dismiss must be granted.  "A fundamental inquiry in a [Section] 1983 case, and as to each defendant, is whether that defendant was personally involved in the alleged constitutional violation."  *Singletary v. Russo*, 377 F. Supp. 3d 175, 185 (E.D.N.Y. 2019).  This is because a defendant's personal involvement in an alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983.  *Excell v. Woods*, 2009 WL 3124424, at *20 (N.D.N.Y. Sept. 29, 2009) (citations omitted).

Thus, to state a cause of action under Section 1983, a plaintiff must plausibly allege some tangible connection between the alleged unlawful conduct and the named defendant.  *Excell*, 2009 WL 3124424 at *20.  As

such, dismissal is appropriate when a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 220 (N.D.N.Y. 2015).

Winnie's amended complaint makes only two mentions of defendant Durant.  First, the pleading alleges that Durant was a corrections officer at Upstate Correctional Facility.  Am. Compl. ¶ 12.  Second, the pleading alleges that plaintiff informed Durant that he was not given his full dinner.  *Id.* ¶ 21. Nowhere does the pleading allege that Durant was responsible for, or even present during, the alleged physical assault that occurred later that night.  *See generally id*.

In contrast, Winnie specifically alleges that Eddy, Bullock, LaPlante, Hastings, Chevier, and Walrath used excessive force against him, and that Gravlin, Eddy, Perez, Bullock, LaPlante, Hastings, Chevier, Walrath, Chase, and Paige observed this alleged use of excessive force and did nothing to stop it.  Am. Compl. ¶¶ 22, 29.

In response to this deficiency in his pleading, Winnie argues that "Defendant Durant's assertion that he was not involved with the events comprising Mr. Winnie's claim is a factual dispute."  Dkt. No. 46 at 6. However, whether "triable issues of material fact" exist is not the proper standard for a motion to dismiss.

Instead, to survive a motion to dismiss, plaintiff must plead facts that plausibly establish Durant's personal involvement in the alleged misconduct. By failing to plead any connection between Durant and the alleged use of excessive force and resulting failure to intervene, plaintiff has not plausibly alleged that Durant is liable for any misconduct. Accordingly, Durant's motion to dismiss will be granted.

## B. **The remaining defendants' motion to dismiss**

### 1. **Res Judicata**

Defendants Gravlin, Eddy, Perez, Bullock, Chase, LaPlante, Hastings, Chevier, Walrath, and Paige have already answered Winnie's amended complaint to the extent it alleges excessive force, failure-to-intervene, and conspiracy claims against them. Dkt. No. 59; *see also* Dkt. No. 58-1 at 5 n.3.[2]

However, these defendants contend that Winnie's re-asserted Fourteenth Amendment due process claims should be dismissed because they are barred by *res judicata* based on the prior stipulation of dismissal. Dkt. No. 58. Alternatively, defendants contend that these claims must be dismissed for failure to state a plausible claim for relief. *Id*.

To determine whether *res judicata* applies, the court must find that the judgment was: (1) a final judgment on the merits; (2) by a court of competent

---

[2] Pagination corresponds to CM/ECF.

jurisdiction; (3) in a case involving the same parties or their privies; and (4) involving the same cause of action." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021). As relevant here, an agreement between the parties to dismiss a claim with prejudice constitutes a "final judgment on the merits." *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986). Further, "a court order which memorializes this agreement bars further proceedings" brought by the same plaintiff upon the same cause of action. *Id.*

On July 14, 2020, the Court "so ordered" a stipulation by the parties in which plaintiff agreed to "voluntarily discontinue[ ] all Fourteenth Amendment due process claims in the Complaint asserted against defendants with prejudice." Dkt. No. 15. At that time, plaintiff had identified defendant Durant but had yet to identify the ten John Does.

Winnie argues that this stipulation is not binding against the named defendants because they were unnamed and unrepresented at the time that the stipulation was executed. In other words, the parties dispute the third element of *res judicata*: whether the named defendants are in privity with the John Doe defendants.

Unlike a traditional privity analysis, however, privity in the res judicata setting is an issue of substance rather than merely a reflection of the names in the caption. *Aplert's Newspaper Delivery Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989). Indeed, literal privity need not exist among

the parties to be deemed identical. *Id.*; *see also Phillips v. Kidder, Peabody & Co.*, 750 F. Supp. 603, 606 (S.D.N.Y. 1990) ("[T]he first element, 'identity of the parties,' is construed somewhat less than literally.").

To determine whether privity exists under federal law,[3] the court should look to "whether the interests of the party against whom preclusion is asserted were represented in prior litigation." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995). In this case "the party against whom preclusion is asserted," is Winnie. Notably, plaintiff was both represented and a party to this action at the time that the stipulation of discontinuance was executed. Even if that were not the case, as long as the interests of the John Doe defendants were the same as the interests of the now-named defendants, *res judicata* would still apply. *Chase*, 56 F.3d at 346.

In his opposition, Winnie fails to advance any arguments as to how the John Doe defendants insufficiently represented the interests of the now-named defendants. Nor is it clear how the interests of the now-named defendants would be harmed by allowing the dismissal of certain claims against them.

Notably, there is support for the contention that a party's Jane or John Doe status does not prevent them from establishing privity for the purposes

---

[3]    While state contract law governs stipulations of discontinuance, *see Israel v. Carpenter*, 120 F.3d 361, 366 (2d Cir. 1997), federal law determines the preclusive effect of a prior federal-court judgment in federal question cases. *Taylor v. Sturgell*, 533 U.S. 880, 891 (2008).

of *res judicata*. *Jackson v. N.Y. State*, 2012 WL 729371, at *2 (W.D.N.Y. Mar. 6, 2012), *aff'd*, 523 F. App'x 67 (2d Cir. 2013) (summary order) ("All of the named defendants in this action (while perhaps not known by name) were to known to the Plaintiff at the time of the filing of the *Axsmith* case as NYSP officers who were allegedly engaging in a pattern of unlawful conduct as a group."). Accordingly, *res judicata* bars Winnie's Fourteenth Amendment due process claims.

## 2. **Fourteenth Amendment**

Even if *res judicata* did not bar these claims, Winnie's Fourteenth Amendment claims would still be subject to dismissal. "The Due Process Clause protects procedural and substantive rights." *Page v. Cuomo*, 478 F. Supp. 3d 355, 370 (N.D.N.Y. 2020). "Procedural due process requires that 'a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Ceja v. Vacca*, 503 F. App'x 20, 22 (2d Cir. 2012) (summary order) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). "Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is incorrect or ill-advised." *Kisembo v. N.Y. State Office of Children & Family Servs.*, 285 F. Supp. 3d 509, 521 (N.D.N.Y. 2018) (citation omitted).

11

Winnie argues that he has alleged procedural and substantive due process violations.  Pl.'s Opp'n at 9–13.  First, plaintiff argues that defendants violated his procedural due process rights by confining him in the special housing unit for three weeks.  *Id.* at 10.  Second, plaintiff argues that defendants violated his substantive due process rights because the alleged use of force was egregious and outrageous.  *Id.* at 13.

### i.  Procedural Due Process

While prisoners do not give up their rights to due process at the prison door, the Supreme Court has narrowly circumscribed the scope of the due process clause to protect no more than a prisoner's most basic liberty interests.  *Phelan v. Durniak*, 2014 WL 4759937, at * 13 (N.D.N.Y. Sept. 24, 2014).  To plausibly allege a § 1983 claim for denial of procedural due process, a plaintiff must show that he (1) possessed an actual liberty interest and (2) was deprived of that interest without being afforded sufficient process.  *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 275 (N.D.N.Y. 2018).

In *Sandin v. Conner*, the Supreme Court determined that to establish a liberty interest a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. 472, 483–84 (1995).

To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon him must be compared with those imposed on the rest of the general population of the facility as well as those in administrative and protective confinement. *Burroughs*, 325 F. Supp. 3d at 276. "When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate." *Id.*

Upon review, this claim will be dismissed. The factual allegations underlying Winnie's procedural due process claim are limited to one numbered paragraph in his complaint, which states: "Defendants unlawfully confined Plaintiff in mechanical restraints, and confined him in a room in which Defendants assaulted the Plaintiff, which is substantially more restrictive confinement than necessary or just, without any evidence or justification for approximately three weeks." Am. Compl. ¶ 38.

This three-week hardship does not qualify as "atypical and significant." The Second Circuit has held that confinement in a special housing unit for a period of 101 days, absent unusual conditions, will generally not qualify as an "atypical hardship." *Burroughs*, 325 F. Supp. 3d at 276. The only condition alleged to be unusual here is the use of mechanical restraints. But courts in this circuit have found that the use of mechanical restraints is typical in prison. *Ruggiero v. Fischer*, 807 F. App'x

70, 73 (2d Cir. 2020) (summary order).  While DOCCS regulations prohibit the use of mechanical restraints for "disciplinary purposes," they may still be used in SHU, to transport inmates both within and outside of the facility, or by order of the superintendent and/or a physician when deemed necessary to prevent injury to other prisoners.  *Id.*  Accordingly, plaintiff's procedural due process claim would still be dismissed even if it were not barred by *res judicata.*

**ii.  <u>Substantive Due Process</u>**

Winnie also alleges that defendants' behavior was so egregious and outrageous that it violated his right to substantive due process.  This claim would also be subject to dismissal if it were not barred by *res judicata* because plaintiff has already plausibly alleged Eighth Amendment violations arising from defendants' alleged use of force.

"Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claim under that explicit provision and not the more generalized notion of substantive due process."  *Conn v. Gabbert*, 526 U.S. 286, 293 (1999).

As relevant here, the Supreme Court has specifically held that "the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions," and not the substantive due process clause, "serves as the primary source of substantive protection to

14

convicted prisoners[.]"  *Whitley v. Albers*, 475 U.S. 312, 327

(1986).  Accordingly, plaintiff's substantive due process claim would still be

dismissed even if it were not barred by *res judicata*.

## V. <u>CONCLUSION</u>

Winnie has failed to allege that defendant Durant was "personally

involved" in any of the misconduct.  Further, *res judicata* bars Winnie's

Fourteenth Amendment due process claims.  However, plaintiff's Eighth

Amendment claims and conspiracy claim remain for discovery.

Therefore, it is

ORDERED that

1. Defendant Durant's motion to dismiss is GRANTED;

2. Defendant Durant is terminated as a defendant in this action;

3. The remaining defendants' motion to dismiss Winnie's Fourteenth

   Amendment claims is GRANTED; and

4. All other claims remain for discovery.

IT IS SO ORDERED.


Dated:  May 19, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge

15